651 A.2d 548

**Tracy PRICE, Appellant,**

v.

**Nancy O. BROWN, V.M.D.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1994.

Filed Dec. 14, 1994.

Petition for Allowance of Appeal Granted April 7, 1995.

70

William G. Halligan, Media, for appellant.

Audrey L. Jacobsen, Philadelphia, for appellee.

Before ROWLEY, P.J., and KELLY and CERCONE, JJ.

ROWLEY, President Judge.

Appellant Tracy Price appeals from an order sustaining preliminary objections in the nature of a demurrer and dismissing her complaint. Appellant alleges that the trial court erred in its determination that an action for breach of a bailment agreement would not lie against appellee Nancy O. Brown, a veterinarian, as a matter of law. For the following reasons, we reverse.

█ We must assess preliminary objections in the nature of a demurrer exactly as does the trial court: we examine only the facts as averred in the complaint, and, admitting as true all material facts set forth therein, as well as all inferences reasonably deducible therefrom, *Composition Roofers Local 30/30B v. Katz,* 398 Pa.Super. 564, 568, 581 A.2d 607, 609 (1990); analyze whether recovery is permitted under any theory of law, *Sutton v. Miller,* 405 Pa.Super. 213, 221, 592 A.2d 83, 87 (1991). This Court may affirm an order sustaining preliminary objections in the nature of a demurrer only if it can be stated, with certainty, that the law permits no relief upon the facts averred. *Berger v. Ackerman,* 293 Pa.Super. 457, 459, 439 A.2d 200, 201 (1981). Any doubt regarding whether a claim for relief has been stated is resolved in favor of overruling the demurrer. *Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 322, 612 A.2d 500, 502 (1992).

█ The sufficiency of appellant's pleadings must be evaluated within the context of the elements of a bailment, of which there are three: (1) delivery of personal property for some particular purpose, (2) under an express or implied agreement that when the purpose is completed, (3) the personal property will be re-delivered to the bailor. *Johnson v. Mathia,* 363 Pa.Super. 397, 399, 526 A.2d 404, 405 (1987). If the facts and circumstances support a determination that a bailment exists, the factfinder then determines whether the bailment was structured for the sole benefit of either the bailor or the bailee, or for the mutual benefit of both. *Beechwoods Flying Serv. Inc. v. Al Hamilton Contracting Corp.,* 317 Pa.Super. 513, 519, 464 A.2d 440, 443 (1983), *aff'd,* 504 Pa. 618, 476 A.2d 350 (1984). If the latter form of bailment is found to exist, the bailee is charged with the exercise of ordinary care and is liable for ordinary negligence. *Johnson,* 363 Pa.Super. at 399, 526 A.2d at 405.

█ A cause of action for breach of a bailment agreement arises if the bailor proves a bailment, makes a demand for return of the bailed goods, and the bailee fails to deliver the

property or account for its loss. *Schell v. Miller N. Broad Storage Co.,* 142 Pa.Super. 293, 301, 16 A.2d 680, 683–684 (1940); *see also* 8 Am.Jur.2d *Bailments* § 311 (1980) (in an action on an implied contract to return the property in good condition, no allegation of specific negligence is necessary). The bailee then has the burden of showing "by clear and satisfactory proof" that the property was lost and in what manner it was lost, for "[w]hen a bailee has exclusive possession of the goods, the acts attending loss or injury must be particularly within his own knowledge. Consequently, the bailee must excuse or justify a failure to return." *Schell,* 142 Pa.Super. at 301, 303, 16 A.2d at 684. If the bailee's accounting does not disclose a lack of due care, however, the burden of proof shifts back to the bailor to prove the bailee's negligence. *Id.* Finally, we note that prior to the enactment of Pa.R.C.P. 1001(b)(1), which abolished the procedural distinctions between trespass and assumpsit, this Court held that a cause of action based on an alleged bailment relationship may be brought in trespass, assumpsit, or replevin. *Beechwoods,* 317 Pa.Super. at 519, 464 A.2d at 443.

■ Turning to the complaint, appellant averred the following facts, inter alia: that on August 29, 1991, appellant delivered a ten-month-old English Bulldog to appellee, a licensed veterinarian, for surgical correction of a prolapsed urethra; that appellee accepted delivery of the dog and performed the surgical procedure on August 30, 1991; that appellant visited her dog at appellee's facility the following day, August 31, 1991, and found the dog to be in physical distress; that an agent of appellee told appellant that the dog would be monitored twenty-four hours a day; that the appellee then closed her office on or about midnight of August 31, 1991, leaving appellant's dog unattended; that appellant's dog expired between the evening of August 31, 1991, and September 1, 1991; that appellee's failure to return the dog to appellant in the same condition of general good health as existed prior to the alleged bailment, or to account for its death, constitutes a breach of a bailment agreement; and that the appellee is

therefore liable to appellant for the purchase price of the dog, or $1200.00.

A review of the law of bailments convinces us that it was premature for the trial court to sustain appellee's preliminary objections, since whether a bailment agreement existed under the facts as averred is a matter for the factfinder. The pleadings herein were sufficient to aver a bailment as a matter of law.

Notwithstanding the fact that appellant has averred sufficient facts to find a bailment of personal property, appellee offers several arguments against finding a bailment under the facts presented. Appellee is quite correct in stating that typical bailment agreements involve inanimate goods, or items of personal property such as automobiles or leased equipment. *See Taylor v. Philadelphia Parking Auth.*, 398 Pa. 9, 156 A.2d 525 (1959); *Ferrick Excavating and Grading v. Senger Trucking Co.*, 315 Pa.Super. 69, 461 A.2d 800 (1983), *rev'd*, 506 Pa. 181, 484 A.2d 744 (1984) (error for Superior Court to find no bailment existed in absence of complete relinquishment of control; bailee's exclusive control not a necessary element of bailment). Case law from this and other jurisdictions is replete, however, with evidence that animals may be the subject of bailments. *See Peoples–Pittsburgh Trust Co. v. Saupp*, 320 Pa. 138, 182 A. 376 (1936) (in determining that appellant was bailee of certain stock, Supreme Court quoted with approval, Jones on Collateral Securities (Pledges), § 396: "Thus if he has taken in pledge domestic animals, he will hold in pledge the young of such animals afterward born"); *Scheel v. Shaw*, 252 Pa. 451, 97 A. 685 (1916) (when servant procures loan of an animal from his master, relationship of master and servant temporarily dissolves; if servant appropriates animal, he may be prosecuted as a bailee); *Conn v. Hunsberger*, 224 Pa. 154, 73 A. 324 (1909) (livery-stable keeper and customer have bailor-bailee relationship; bailor not an insurer of animal's suitableness, but bound to exercise reasonable care to furnish fit animal); *Yearsley v. Gray*, 140 Pa. 238, 21 A. 318 (1891) (agister or bailee not required to restore animal taken for pasture until adequately compensated; agister has com-

mon law lien for animal's keep); *Romero v. Santa Clara County,* 83 Cal.Rptr. 758, 3 Cal.App.3d 700 (1970) (dogs are property and in proper cases, owner may sue for their deaths); *Karpe v. Great Am. Indem. Co.,* 11 Cal.Rptr. 908, 190 Cal. App.2d 226 (1961) (cow owner who left animal at ranch to have cow bred by ranch owner's bull could recover when ranch owner mistakenly sent cow to slaughterhouse along with his own stock, either for breach of bailment contract, negligence, or conversion); *Marcus v. E. Agric. Ass'n, Inc.,* 58 N.J.Super. 584, 157 A.2d 3 (1959) (where owner of a horse places it out for board and pasture, party receiving the animal becomes a bailee; agistment, which is the taking in and feeding or pasturing of horses, cattle or similar animals for reward, is a species of bailment).

■ Moreover, while both appellee and the trial court suggest that veterinarians should be exclusively subject to regulation under the Veterinary Medicine Practice Act, 63 P.S. § 485.1 *et seq.,* which they find to be not "unlike those statutory provisions governing the practice of other health care providers within the Commonwealth," Opinion (Furber, J.), 3/18/94, at 4, veterinarians are not exempt from state regulation with respect to the care and keeping of dogs, in addition to the medical care or treatment provided. 3 P.S. § 459–101 *et seq.*[1]

Both the trial court and appellee next rely upon this Court's decision in *Durkin v. Equine Clinics, Inc.,* 313 Pa.Super. 75,

1. The trial court stated its belief that appellant's "position would be stronger" if the appellee had "been the operator of a kennel agreeing to provide temporary lodging for, or maintenance of, the animal," implying that a veterinarian cannot also be subject to state regulation as is any other operator of a kennel. Opinion, at 5. That is not always the case, for under the "Dog Law," 1982, Dec. 7, P.L. 784, No. 225, art. I, § 101, boarding kennels are subject to, inter alia, licensing requirements, record-keeping requirements, and state inspections for sanitary conditions. 3 P.S. §§ 459–201, 459–207(c), 459–218.

While excluding only those facilities where the practice of veterinary medicine is performed and "the establishment is covered by the provisions of the [Veterinary Medicine Practice Act]," section 459–102 specifically includes "facilities operated by a veterinarian whether or not this facility is on the same premises as a veterinary hospital" in the definition of boarding kennels to which the regulations apply.

459 A.2d 417 (1983), for the proposition that a "doctor/patient" relationship exists between a veterinarian and the animal treated, and therefore an action brought against a veterinarian must be for professional malpractice, as would a cause of action against a licensed physician. Rather, *Durkin* involved a negligence action brought against a veterinarian for the death of a racehorse after a drug injection. That part of the decision relied upon by appellee, which considered only whether the trial court erred in refusing to give a res ipsa loquitur instruction, held, as appellee suggests, that no presumption or inference of negligence arises merely because medical treatment to an animal, as is true of medical treatment provided by a physician to a human patient, culminates in a bad result. *Id.*, 313 Pa.Super. at 79–80, 459 A.2d at 419. Since the cause of action was one of malpractice, the Court had no reason to address other possible causes of action.

We believe appellant averred sufficient facts which could allow a fact finder to determine that a bailment agreement existed.[2] Assuming, as we must, that the pleadings and inferences arising therefrom are true, appellant's dog, an item of personal property, was delivered to a licensed veterinarian for the primary purpose of receiving medical treatment, for which services appellee would be reimbursed. Thus the facts aver a delivery of personal property for a particular purpose which was mutually beneficial to appellant and appellee. The animal received treatment and was in appellee's custody and control for two days following the completion of the medical procedure. Thus the facts aver appellant's relinquishment of control and possession of her dog. Leaving aside the averment that appellee failed to monitor appellant's dog overnight, as the facts aver was promised, and its implications of negligent care, when appellant returned to the hospital to claim her dog, the animal had died. Thus the facts averred a demand and a failure to return the property. The complaint states

2. And, if a bailment is found, appellant would be, at the least, entitled to an accounting for the loss of her property. Whether such an accounting would disclose evidence of negligence, for which the bailee could be found liable under a theory of bailment, is for the factfinder to determine.

that no reason for the loss of the animal was provided. Thus the facts aver that no accounting for the loss of the property was offered. The question that arises at this juncture is not whether the veterinarian could only be found liable on a theory of professional malpractice in the provision of medical treatment, but whether an implied bailment agreement could be found, aside from an agreement to provide medical treatment to appellant's dog.

In *Sparrow v. Airport Parking Co. of America*, 221 Pa.Super. 32, 38, 289 A.2d 87, 91 (1972), this Court held that a contract of bailment may be implied only where the natural and just interpretation of the acts of the parties warrants such a conclusion; and no bailment can be implied where it appears that it was the intention of the parties, as derived from their relationship to each other and from the other circumstances of the case, that the property was to be held by the party in possession in some capacity other than as bailee. *See also*, 8 C.J.S. *Bailments* § 14 (1962). This Court found that a relinquishment of dominion, possession and control over personal property was dispositive on the question of whether an implied bailment contract exists. *Sparrow*, 221 Pa.Super. at 36, 289 A.2d at 90; *See also Taylor*, 398 Pa. at 12, 156 A.2d at 527; 8 Am.Jur.2d *Bailments* § 20 (1980).

We are not persuaded by either the trial court's statement that it is unaware of any "Pennsylvania decision *imposing liability on a veterinarian* by reason of his breach of a bailment agreement under circumstances of this nature," Opinion, at 2 (emphasis added), or appellee's assertion that there is no precedent that would permit recovery under a theory of bailment *for injuries* to an animal left for medical care with a licensed veterinarian, Appellee's Brief at 8 (emphasis added). While interesting and no doubt correct observations, neither is legally relevant to the issue of whether appellant averred sufficient facts to plead a bailment. Moreover, both statements are grounded in policy considerations, essentially expressing a fear that should a bailment be found under the facts presented by this case, appellee would some-

how be strictly liable for the loss of the animal.[3]  Rather, once sufficient facts are found to support a finding of an implied bailment agreement, appellant is entitled to an accounting for the loss of her property.

We find no support for the trial court's position that only one cause of action, negligence, may be brought against a licensed veterinarian, nor do we agree with the trial court that an animal and a veterinarian enjoy the same doctor/patient relationship as do a human being and a physician.  A human patient cannot leave his or her liver or heart for treatment and make a subsequent demand for its return;  it is the patient who is treated and the patient who has a cause of action against the physician providing medical treatment.  A dog, recognized as personal property under the law of this Commonwealth, 3 P.S. § 459–601(a),[4] is incapable of bringing its own cause of action against the veterinarian treating it;  its owner must bring suit.  Where, as here, the owner chooses to bring a cause of action in bailment rather than negligence, the relevant question for our purposes is whether sufficient facts are presented to support an implied agreement between the parties, not whether the professional status of one of the parties exempts him or her, as a matter of law, from being named as a defendant in such an action.

For the above reasons, we conclude that the trial court erred in not denying appellee's preliminary objections and providing appellant an opportunity to prove an implied bailment agreement existed.

**3.** We find it significant that the trial court stated, in its opinion: "While the Court agrees that a dog is personal property, the Court cannot agree that a theory of bailment *can or should* afford a remedy here."  Opinion, at 2 (emphasis added).

**4.** *See, Miller v. Peraino*, 426 Pa.Super. 189, 626 A.2d 637 (1993) (cause of action for intentional infliction of emotional distress cannot legally be founded on veterinarian's behavior toward an animal); *Daughen v. Fox*, 372 Pa.Super. 405, 539 A.2d 858 (1988) (claim for intentional infliction of emotional distress will not lie for destruction of pet dog; proper measure of damage is value of property prior to destruction), *appeal denied*, 520 Pa. 605, 553 A.2d 967 (1989).

Accordingly, we reverse the trial court's order and remand for further proceedings.

Order reversed. Case remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction relinquished.